# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 14, 2017         Decided May 16, 2017

No. 16-1031

NATALIE RUISI AND MICHAEL PELUSO,
PETITIONERS

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

On Petition for Review of an Order
of the National Labor Relations Board

*Aaron B. Solem* argued the cause for petitioners. With him on the briefs were *Glenn M. Taubman* and *Alyssa K. Hazelwood*.

*Kyle A. deCant*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Richard F. Griffin*, *Jr.*, General Counsel, *Jennifer Abruzzo*, Deputy General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney.

Before: KAVANAUGH and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Petitioners Natalie Ruisi and Michael Peluso ("Petitioners") were employees of Host International ("the Company"), which had a collective bargaining agreement with the Local Joint Executive Board of Las Vegas, representing the Culinary Workers Union, Local 226, and the Bartenders Union, Local 165 ("Union"). Ruisi and Peluso signed Union dues-checkoff authorizations in 2004 and 2007, respectively, but they sought to revoke their authorizations in 2013. In order to do this, Ruisi and Peluso were required to submit written requests within 15 days of the anniversary of the dates when they signed the authorizations. Ruisi called the Union to find out the "Anniversary Dates" for herself and Peluso. She was told that the requests needed to be submitted in writing. She and Peluso then filed unfair labor practice charges with the National Labor Relations Board ("NLRB" or "the Board"), and the Board's General Counsel issued a complaint against the Union alleging multiple violations of Section 8(b)(1)(A) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(b)(1)(A). The Board found one violation and dismissed the remaining charges.

In their petition for review, Ruisi and Peluso contend that the NLRB erred in holding the Union did not violate its duty of fair representation when it declined to provide them with their Anniversary Dates over the telephone. They argue that "the Union violated its duty of fair representation because its actions were arbitrary, in bad faith, and discriminatory." Br. of Pet'rs at 10. In particular, they assert that a "Union cannot refuse to provide employees with easily accessible, time-sensitive information, over the telephone that is necessary to comply with the Union's self-imposed revocation procedure." *Id*.

The Board, in turn, says that, "applying the accepted duty-of-fair-representation standard for determining whether internal union policies are unlawfully arbitrary, [it] reasonably found that the Union's policy was not so far outside a wide range of reasonableness as to be irrational." Bd. Br. at 10. "Indeed, as the Board recognized in assessing the Union's policy, when . . . employee[s] request[] their authorization date[s] from the Union, the Union has a need to ensure that it provides the correct employee with the correct information. Requiring that the request be in writing allows the Union to properly verify the request and authenticate the date before divulging it." *Id.*

On the record before us, we hold that the Board reasonably concluded that the Union's disputed policy was not arbitrary. The Board also reasonably found that the Union neither discriminated against Ruisi and Peluso, nor acted in bad faith in requiring the employees to submit written requests in order to receive their authorization dates. Therefore, the Board did not err in concluding that the Union did not breach its duty of fair representation. Accordingly, we deny the petition for review.

## I.     Background

As noted above, Petitioners decided to resign their Union memberships and revoke their dues-checkoff authorizations in 2013. Pursuant to established Union rules, Union members could revoke their dues check-off authorization "by sending written notice to both the Employer and the Union . . . during a period of fifteen (15) days immediately succeeding" a member's Anniversary Date. Joint Appendix ("JA") 217. The Union stores paper copies of each member's dated dues-checkoff card, and also has some electronic copies scanned into its database. The Union also sends copies of employee dues

check-off authorizations to the Company's payroll department. If a Union member does not recall her Anniversary Date, she may request the information from either the Union or the employer.

When Ruisi telephoned the Union to find out the Anniversary Dates for both herself and Peluso, she was told by Wanda Henry, the Director of Operations, that the Union does not provide that information over the telephone. Henry informed Ruisi that she and Peluso could either submit a written request for the dates or contact the Company's payroll department. Petitioners then called the payroll department, but it provided them with the wrong dates, informing Ruisi and Peluso that their Anniversary Dates were August 16 and March 8, respectively.

Based on this information, Peluso mailed his written withdrawal to the Union on February 20, 2014. Unbeknownst to him, his actual Anniversary Date was February 5, so he had mailed his letter on the last day of his fifteen-day revocation period. The Union determined, however, that Peluso's withdrawal was one day too late. On February 25, Henry called Ruisi, whom Peluso had authorized to speak for him. Henry informed Ruisi of Peluso's actual Anniversary Date, and told her that Peluso's attempted withdrawal was untimely. Between March 3 and June 23, 2014, Henry also mailed Peluso multiple letters containing an explanation of this rejection and a copy of his dues-checkoff card.

Petitioners then filed unfair labor practice charges with the Board. The General Counsel issued a complaint against the Union, alleging that it had unlawfully failed to honor Peluso's timely withdrawal, refused to provide Petitioners with their Anniversary Dates, delegated to the Company the task of

providing this information, and provided the Petitioners with the wrong Anniversary Dates.

A hearing was held before an Administrative Law Judge ("ALJ"). The ALJ recommended sustaining only the charge that the Union had unlawfully refused to honor Peluso's withdrawal by miscalculating the applicable revocation period. *Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local 226, & Bartenders Union, Local 165* ("*Local Joint Executive Board*"), 363 NLRB No. 33, at 5 (2015). The ALJ found no merit in the remaining charges and recommended that they be dismissed. With regard to the allegation that the Union violated its duty of fair representation when it refused to provide Petitioners with their Anniversary Dates over the telephone, the ALJ determined that the Union's requirement that such requests be in writing was not "arbitrary," and therefore unlawful, because it was not "so far outside 'a wide range of reasonableness' to be irrational." *Id.* (quoting *Mail Handlers Local 307*, 339 NLRB 93 (2003)). The ALJ also found that Henry had not deliberately frustrated Petitioners' attempts to leave the Union, and made a point to distinguish the facts in this case from those in *Electrical Workers, Local 66*, 262 NLRB 483 (1982).

The Board adopted the ALJ's rulings, findings, and conclusions. *Local Joint Exec. Bd.*, 363 NLRB No. 33, at 1. It agreed that the Union's refusal to provide Anniversary Dates absent a written request did not violate the duty of fair representation, and additionally stated that this conclusion was consistent with Board precedent. *Id.* at 1 n.1.

Ruisi and Peluso then filed this petition for review, challenging only the Board's finding that the Union's requirement that Anniversary Date requests be made in writing

does not violate the duty of fair representation. We have jurisdiction to decide this case pursuant to 29 U.S.C. § 160(f).

## II.     Analysis

### A.  *Standard of Review*

Our role in reviewing a decision of the NLRB is limited. "We will uphold the Board's dismissal of an unfair labor practice charge 'unless its findings are unsupported by substantial evidence in the record considered as a whole, or unless the Board acted arbitrarily or otherwise erred in applying established law to facts.'" *United Food and Commercial Workers Union Local 204 v. NLRB*, 506 F.3d 1078, 1080 (D.C. Cir. 2007) (quoting *Gen. Elec. Co. v. NLRB*, 117 F.3d 627, 630 (D.C. Cir. 1997)) (internal quotation marks omitted). Substantial evidence requires enough "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Micro Pac. Dev. Inc. v. NLRB*, 178 F.3d 1325, 1329 (D.C. Cir. 1999) (citation omitted).

Under this deferential standard of review, we will reverse the Board "only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 935 (D.C. Cir. 2011) (quoting *United Steelworkers of Am. v. NLRB*, 983 F.2d 240, 244 (D.C. Cir. 1993)) (quotation marks omitted). Finally, "[w]here, as here, the Board adopts the ALJ's findings and conclusions as its own, we apply the same deferential standard to those findings and conclusions." *Weigand v. NLRB*, 783 F.3d 889, 895 (D.C. Cir. 2015).

**B.** *The Union Did Not Violate Its Duty of Fair Representation*

The duty of fair representation is not found in any express provision of the NLRA, but is instead a judicially-created doctrine which derives from a union's status under Section 9(a) of the Act as the exclusive bargaining representative of a unit of employees. *See* 29 U.S.C. § 159(a); *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998). The core requirement of the duty of fair representation is that a union must "represent all members fairly." *Marquez*, 525 U.S. at 44. The duty of fair representation was first articulated in a case involving a charge of race discrimination against a union. *See Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192 (1944). However, the duty "has grown enormously in scope since 1944 . . . from avoiding racial discrimination to providing daily representation." *Int'l Union of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. NLRB*, 675 F.2d 1257, 1264 (D.C. Cir. 1982).

A union breaches its duty of fair representation when it engages in conduct towards a member that is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "Arbitrary," "discriminatory," and "bad faith" are separate prongs of the duty of fair representation, each requiring independent analysis. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1243 (7th Cir. 1997) (stating that each prong must be individually assessed); *see Marquez*, 525 U.S. at 44 (reaffirming this tripartite standard). Parties who seek to prove a breach of the duty of fair representation bear a heavy burden. Petitioners concede this. *See* Br. of Pet'rs at 24–26 (discussing "bad faith" and "discriminatory" tests); Oral Arg. at 3:37–4:10 (counsel for Petitioners conceding that the "arbitrary" test is difficult to meet).

In this case, Petitioners invoke all three prongs of the duty of fair representation. They contend that the Union's policy of refusing to provide Anniversary Dates absent a written request is arbitrary, unlawfully discriminates against employees who wish to leave the Union, and reflects bad faith on the part of Union officials whose aim is to complicate the withdrawal process in order to prevent employees from revoking their memberships. We find no merit in these claims.

1. The Union's policy is not arbitrary

Petitioners' principal claim is that the Union violated the duty of fair representation because its policy of providing Anniversary Dates only after receiving a written request is arbitrary. This claim fails. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation and quotation marks omitted); *accord Mail Handlers Local 307*, 339 NLRB at 93. To survive an arbitrariness challenge, a union need not "prove 'that the choices it makes are better or more logical than other possibilities,' but, instead, that the union 'act[s] on the basis of relevant considerations,' not arbitrary ones." *Thomas v. NLRB*, 213 F.3d 651, 656 (D.C. Cir. 2000) (quoting *Reading Anthracite Co.*, 326 NLRB 1370, 1370 (1998)). Petitioners do not come close to showing that the Union violated its duty of fair representation in this case.

The ALJ credited the testimony of Henry, who explained that she follows a standard procedure in refusing to give out Anniversary Dates over the telephone. Henry advises members to send in written requests or contact their employer's payroll department. The ALJ further determined that Henry followed this procedure when she spoke with Ruisi. The Board adopted

the ALJ's findings and conclusions on this point. *Local Joint Exec. Bd.*, 363 NLRB No. 33, at 1 n.1. Taken as a whole, the Board's decision (including its adoption of the ALJ's findings and conclusions) may be fairly read to hold that the Anniversary Date policy was justified on the basis of the Union's legitimate concerns over member privacy and administrative efficiency. The Board also correctly found that the Union policy was supported by established precedent.

The Union considers an employee's Anniversary Date to be "confidential," because it is specific to that worker and tracks with the important right to withdraw from the Union. *See* JA 47; *Local Joint Exec Bd.*, 363 NLRB No. 33, at 4. Therefore, out of concern for the privacy of its members, the Union requires them to request Anniversary Dates in writing. Henry testified that she instructs employees to include identifying information in their written requests, such as their name and social security number, so that she is able to ensure that only the correct employee receives this information. It can hardly be doubted that the Union has a legitimate interest in verifying the identity of the requestor of such information.

Furthermore, the record shows that the Union's policy allows it to efficiently organize and respond to Anniversary Date requests. As the Board noted, at the time of this dispute the Union had approximately 50,000 members, and Henry received, on average, three to four phone calls each day regarding membership withdrawals. Henry explained that responding to Anniversary Date requests could be time-consuming because that information is not always readily and accurately available. While the Union had some electronic scans of dues-checkoff cards, Henry had found those records sometimes contained errors or were incomplete. Therefore, the only way for Henry to ensure that the Union was properly conveying accurate information to its members was by

searching the Union's paper filing system in order to find a member's original dues-checkoff card. The Union's policy thus enables it to respond to its members in a responsible fashion. It certainly does not reflect an arbitrary administration of Union affairs.

In rejecting Petitioners' claim, the Board said: "We agree with the [ALJ's] finding that the Respondent's action was not "so far outside 'a wide range of reasonableness' as to be irrational." *Local Joint Exec. Bd.*, 363 NLRB No. 33, at 1 n. 1 (citing *Mail Handlers Local 307*, 339 NLRB at 93). The Board further noted:

> Other Board precedent also supports the judge's conclusion. See *Postal Service*, 302 NLRB 701, 702 (1991) (finding union did not violate Sec. 8(b)(1)(A) when it responded to member's request for anniversary dates of dues-checkoff authorizations by informing employee that standard procedure for obtaining those dates was to submit written revocation form); see also *Boston Gas Co*., 130 NLRB 1230, 1231 (1961) (contract clause requiring written notice of revocation of dues-checkoff authorizations to both employer and union not so unduly burdensome as to effectively preclude employees from revoking dues assignment).

*Id.* The Board's reasoning and the authority upon which it relies are compelling.

Petitioners argue that the Board's decision is shortsighted and unreasonable because it fails to take account of the "time-sensitive" nature of the information in question. Br. of Pet'rs at 10–11. This argument makes little sense, however, because even if the Union was required to disclose information over the

telephone, some employees would still miss the fifteen-day cut-off date if they called too late.

Petitioners also point to some Board decisions which they claim stand for the proposition that a union violates the duty of fair representation if it fails to provide employees with information upon request. But these cases are inapposite because they involve situations in which unions entirely refused to share information. *E.g.*, *Branch 529, Nat'l Ass'n of Letter Carriers*, 319 NLRB 879, 880–81 (1995) (union refused to provide copies of a member's grievance forms); *Law Enf't & Sec. Officers, Local 40B*, 260 NLRB 419, 420 (1982) (union refused to share relevant collective bargaining agreement and health and welfare plan documents). The Union here did not tell Petitioners that it would not disclose their Anniversary Dates. Rather, the Union simply required employees to submit their requests in writing. And the Union readily disclosed Peluso's Anniversary Date once he submitted a written request. The Union's policy may be annoying to some, but it certainly cannot be seen to violate the duty of fair representation.

Petitioners cite *Hughes Aircraft Co.*, 164 NLRB 76 (1967), in support of their claim that a union has an affirmative "duty to divulge information it has easy access to." Br. of Pet'rs at 20–21. Petitioners say that Henry violated this duty because she could have quickly and easily accessed Petitioners' Anniversary Dates on her computer. This claim fails. In *Hughes Aircraft*, the Board found that the employer and the union violated the Act by giving an employee incorrect information about the time period in which he could revoke his dues-checkoff authorization. 164 NLRB at 77–79. In this case, the record clearly shows that the Union's policy was designed to protect the privacy of employees and to ensure that employees who submitted written requests received accurate information from the Union. Henry explained that Anniversary

Dates were not always easily and accurately accessible by computer. Therefore, once Henry received a written request, she searched hard copy records to be sure that the employee was given accurate information. That is exactly what happened here. Upon receiving Peluso's written revocation, Henry found his dated paper dues-checkoff card and made sure he received a copy. The decision in *Hughes Aircraft* is thus inapposite.

In light of the Union's legitimate concerns over privacy and efficiency, and under established Board precedent and case law, it is clear that the Union's policy is not "so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67 (citation omitted).

2. The Union's policy is not discriminatory

Petitioners further contend that the Union's policy violates the duty of fair representation because it discriminates against those who wish to leave the Union. The Supreme Court has explained that the duty of fair representation bars only "invidious" discrimination. *Id.* at 81. Proving such discrimination requires "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). In assessing whether a union has violated the discrimination prong of the duty of fair representation, courts look to the union's subjective motivations. *See Simo v. Union of Needletrades, Indus. & Textile Emps.*, 322 F.3d 602, 618 (9th Cir. 2003) (quoting *Crider*, 130 F.3d at 1243).

Petitioners' allegation is completely without merit because there is nothing in the record to support it. The record indicates that the Union treats all members the same with regard to Anniversary Date requests and Petitioners cite nothing to refute

this. The policy is related to the "legitimate union objectives" of safeguarding members' privacy and operating in an efficient manner. *See Lockridge*, 403 U.S. at 301. And there is no indication whatsoever that the Union bore any animosity towards Petitioners or others who wished to revoke their dues-checkoff authorizations. Because Petitioners are unable to point to *any* evidence of unlawful discrimination, much less "substantial evidence" of "intentional [and] severe" discrimination, we reject their claim. *See id.*

3.   There is no evidence that the Union acted in bad faith

Finally, Petitioners claim that the Union violated the duty of fair representation by acting in bad faith. A union commits a bad faith violation of the duty of fair representation when it engages in "fraud, or deceitful or dishonest action." *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. NLRB*, 41 F.3d 1532, 1537 (D.C. Cir. 1994) (citation omitted). This is a "demanding standard . . . requiring a union's actions toward unit employees to be sufficiently egregious or so intentionally misleading [as] to be invidious." *Id.* (quotation marks and citation omitted).

There is not a shred of evidence in the record indicating "egregious," "deceitful," or "misleading" conduct by the Union. To the contrary, the record shows that Henry acted in *good* faith in her dealings with Ruisi and Peluso. The ALJ determined that Henry did not treat Ruisi with disrespect in their initial phone conversation, but simply explained to her that she and Peluso could secure their Anniversary Dates by sending in a written request to the Union or contacting the Company's payroll department. And after Peluso submitted his written revocation on February 20, 2014, Henry responded to him in a timely and diligent manner. She called him on February 25, and sent him a copy of his dues-checkoff card via

certified mail on March 3. That letter was returned, so Henry sent another on March 12. When that letter also failed to reach Peluso, Henry sent two more in order to ensure he received a copy of his dues-checkoff card.

The Board properly determined that the facts in this case are readily distinguishable from those in *Electrical Workers, Local 66*, 262 NLRB 483. There, a union official repeatedly refused to allow a member to revoke his membership, and also verbally abused him. *See id.* at 484. Henry did not engage in any such behavior.

Because the record is clear that the Union did not act in bad faith, we reject Petitioners' claim that it violated this aspect of the duty of fair representation.

## C. *There Is No Good Reason to Remand This Case to the Board*

Finally, we reject Petitioners' assertion that the Board's Decision was devoid of reasoning or citations to applicable law, and therefore should, at a minimum, be remanded for further consideration and explanation. In holding that the Union did not violate the duty of fair representation, the Board adopted the ALJ's discussion of and reliance on the Union's privacy and efficiency concerns, and on the ALJ's application of the law. In addition, the Board cited relevant precedent to support its determination that the Union's Anniversary Date policy was not unlawful. Based on the Union's legitimate concerns and the established case law, this was a straightforward decision that did not require more analysis.

## III.    Conclusion

For the reasons stated above, we deny the petition for review.